HARRIET COTTON MILLS v. LOCAL UNION NO. 578, TEXTILE WORK-
ERS UNION OF AMERICA (AFL-CIO) ; TEXTILE WORKERS UNION
OF AMERICA (AFL-CIO) ; JOHNNY ROSE, CHARLIE THOMAS
DUKE, CLINT ROBERSON, HILTON PARRISH, WALTER C. WAT-
KINS, ANDREW PENDERGRASS, LeROY WILLIAMSON, WOODROW
GOODING, JOHN HENDERSON, HOMER ROBERTS, JR., DOUGLAS
ROSE, CARL NEAL, LEE HARRIS, HENRY HARRIS, CHARLIE
HARRIS, HERBERT PARRISH, RANSOM HARGROVE, JOYCE R.
MEDLIN, ESTHER C. ROBERSON, RACHEL PIRTLE, BOSHER EU-
BANKS, ETTA AYSCUE, LEWIS WRIGHT, CLYDE WOODLIEF,
GEORGE ROSE, MRS. GEORGE ROSE, EDITH J. PEOPLES,
BLANCHE LEWIS, WARREN WALKER, SALLY JOE WALKER, AL-
BERTA ROSE, RUBY R. CURRIN, MILTON CURRIN, DORTITH
THOMPSON, WILLIE JARRELL, FRED LEE COLLIER, WILLIAM
CHOPLIN, DAVID SAMUEL PULLEY, DARRELL HEDGEPETH,
LEWIS CLAYTON, MILO CLEATON, EARL BENNETT, THOMAS
STARNES, HERBERT INSCOE, CLARENCE AYSCUE, ANDREW
MEDLIN, OSCAR FAULKNER, RANDELL SMITH, LAWRENCE
PEACE, CURTIS ROSE, JOHN FAUCETTE, RALPH FAUCETTE, JES-
SIE ROBERSON, LOU VENE B. COGHILL, VIRGINIA R. PEOPLES,
SARAH D. PACE, ALVIN C. BREEDLOVE, LULA BARHAM, DORSEY
EATMAN, JAMES EATMAN, WILLIAM C. VOYLES, MYRTLE JOHN-
SON, MYRTLE P. PEOPLES, BRANSON BLAKE, MILDRED BLAKE,
HAROLD VIVERETTE, LONNIE FAISON, JOHNNY MARTIN, TOM
WILLIAMS, BENNIE EDWARDS, HORACE FAULKNER, MARY M.
WEAVER, LeROY NORRIS, JAMES HOLMES, MILDRED McGHEE,
BASIL GREEN, JOE JARRELL, FORREST McGHEE, CHESLEY YAR-
BOROUGH, ZOLA MAE AYSCUE, GOLDA GREY AYSCUE, DAYLON
AYSCUE, BLANCHE WHITE, JAMES R. ADCOX, JR., ANNIE TUR-
NER, RAYMOND B. HUDSON, EUGENE HUDSON, LILLIE JONES,
MATTIE A. PARRISH, RUBY C. ROSE, JOE FOWLER, ROBERT
PARRISH, MAUDE JARRELL, FLORENCE ROBERSON, JOE ROB-
ERSON, LIJAH PEOPLES, JAMES FREEMAN, OSCAR HEDGEPETH,
JR., JIM STEVENSON, HOMER ROBERTS, JR., CHARLIE RAINES,
JOE PACE, MARVIN GRIFFIN, VOLLIE MANNING, ROY FRANCIS,
ROBERT GRISSOM, ALBERTA R. McGHEE, BOBBY JONES, CHAR-
LIE WEST, FRED LEE COGHILL, ROBERT RAINES, CLAUDIA GUP-
TON, ELIZABETH MARKS, JAMES TART, ANDREW RAINES, BUD
DUKE, MORTON ROBERSON, THURSTON LIGGON, EDWARD F.
TUCKER, WILLIAM K. HARRIS, HOMER ROBERTS, SR., AND ALL
OTHER PERSONS TO WHOM NOTICE AND KNOWLEDGE OF THIS ACTION MAY COME.

(Filed 25 November, 1959.)

1. **Appeal and Error § 38—**

    Assignments of error not discussed in the brief are deemed abandoned.

2. **Constitutional Law §§ 31, 37:    Contempt of Court § 6:    Criminal Law
    § 155—**

    In proceedings under an order to show cause why respondents should
    not be held in contempt of court for the willful violation of a restrain-
    ing order, the admission of affidavits tending to establish specific acts
    done by respondents in violation of the order will not be *held* for error

when respondents do not challenge the admission of the affidavits or indicate any desire to cross-examine any affiant on the hearing, or move to strike, or except to the order on such ground, since respondents will be held to have waived their rights of confrontation.

### 3. Contempt of Court § 6—

As to certain of respondents it *is held* that the evidence, including their own testimony at the hearing upon the order to show cause, was amply sufficient to sustain the finding that they had actual knowledge of the contents of the restraining order they were charged with willfully violating.

### 4. Same—

There was no evidence that one of respondents was a former employee of plaintiff, or was on strike, or was a member of defendant union, or that he resided in the county or had been near plaintiff's plant prior to the occurrence in question, and the sole evidence as to his violation of the order was testimony of a witness of acts by the respondent seen through binoculars from plaintiff's plant. *Held:* The evidence of the posting of a similar restraining order at the gates of plaintiff's plant and at the court house, and the publicizing of the order by newspaper and radio in the county, is insufficient to charge the respondent with actual knowledge of the contents of the restraining order, and the judgment in contempt is reversed as to him.

HIGGINS, J., not sitting.

APPEALS by David Samuel (Sambo) Pulley, William Choplin and James (Tee-Tie) Morris from *Bickett, J.,* June Term, 1959, of VANCE, docketed in this Court as No. 388.

Separate orders were entered June 23, 1959, in which each appellant was adjudged in contempt "for wilfully, knowingly and intentionally," violating, on April 6, 1959, the terms of a temporary restraining order issued February 13, 1959, by Judge Bickett, based on facts alleged in the verified complaint, in the above entitled action, which, by order of March 5, 1959, was continued in full force and effect until trial on the merits.

In No. 385, *ante,* 218, involving appeals from other orders entered in the above entitled action, the pertinent facts as to the institution of the action, the pleadings, and the provisions of the restraining order, are stated; and reference is made thereto. Suffice to say, Pulley and Choplin, defendants in the action, were duly served with copies of the summons, complaint and restraining order. Morris was not a defendant nor was he served with summons, complaint or restraining order.

On April 16, 1959, based on plaintiff's petition of April 11, 1959, and attached affidavits, Judge Bickett ordered five persons, namely

David Samuel (Sambo) Pulley, William Choplin, James (Tee-Tie) Morris, Nellie Roberson and Barbara Roberson, to appear before him on April 29, 1959, at designated time and place, to show cause why each of them should not be punished for contempt of court for wilful violation of said restraining order. This order to show cause set forth that it appeared from the verified petition and attached affidavits that each of the respondents, after "actual notice and knowledge of said Temporary Restraining Order," had wilfully violated the terms thereof. Copies of said petition and attached affidavits and of said order to show cause were served April 23, 1959, on each of the five respondents.

An answer to said order to show cause, filed in behalf of the five respondents, was verified by each of them. They denied the alleged misconduct and asserted "that they did not commit and had no intent to commit any act of violence, as described and set forth in said Petition and Affidavits, and that they have not had and do not now have any intent to commit any voluntary and wilful act in violation of said restraining order." They prayed that they not be adjudged in contempt and that the order to show cause be dismissed.

A partial hearing on return to said order to show cause was held April 30, 1959; and the hearing thereon was continued to and completed on June 23, 1959.

Plaintiff offered in evidence the court records referred to above and the affidavits of Thomas D. Peck, Murphy D. Shearin, Herman S. Raines, W. H. Neathery, T. E. Stegal, Albert Thorne, Sheriff E. A. Cottrell, and the testimony of Eugene Allen. Respondent Pulley offered in evidence his own testimony and the testimony of Myrna Viverette and of Ruby Currin. Respondent Choplin offered in evidence his own testimony and the testimony of Ruby Currin. Respondent Morris did not testify or offer evidence.

Each of Judge Bickett's said three orders of June 23, 1959, referring by name to the particular respondent directly affected thereby, contains, *inter alia*, these findings of fact and provisions:

"That (named respondent) had actual knowledge of the Restraining Order and the contents thereof issued by Judge William Y. Bickett on February 13, 1959, . . .

"And the Court further finds as a fact . . . that at or about 12:10 o'clock P.M. on April 6, 1959, (named respondent) by means of a sling shot, shot steel balls across Plaintiff's fence at the cars of persons working in Plaintiff's plant while the same were parked in Plaintiff's parking lot, and at plaintiff's building; that some of the

steel balls struck the cars of persons working in Plaintiff's plant and some of the steel balls struck Plaintiff's buildings.

"The Court further finds as a fact that the said Restraining Order was in full force and effect on April 6, 1959, and that (named respondent) wilfully, knowingly and intentionally violated the terms of the Restraining Order at or about 12:10 o'clock P.M. on April 6, 1959, by shooting steel balls with a sling shot at the cars of persons working in the Harriet Cotton Mill, while the cars of the said workers were parked in Plaintiff's parking lot, and shooting steel balls with a sling shot at Plaintiff's yard office building, striking the same, thereby violating Section 2 of the Restraining Order by abusing and damaging the property of, and intimidating persons who work in Plaintiff's plant while on Plaintiff's premises;

"The Court further finds that the above acts committed by the said (named respondent) were committed for the purpose of wilfully, knowingly and intentionally intimidating employees and persons who work in Plaintiff's plant.

"The Court further finds as a fact that (named respondent) on the 6th day of April, 1959, at or about 12:10 o'clock P.M. did wilfully, knowingly and intentionally violate the terms of the Restraining Order issued herein.

"NOW, THEREFORE, the Court does hereby find, and IT IS ORDERED AND ADJUDGED that (named respondent) is in contempt of this Court for wilfully, knowingly and intentionally violating the terms of the Restraining Order issued herein.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that (named respondent) be confined to the common jail of Vance County for a period of 30 days and pay a fine of $250.00, and 1/5 of the Cost to be taxed by the Clerk."

Each respondent excepted to the order of June 23, 1959, relating specifically to him, and to the findings of fact and conclusions of law set forth therein, and appealed.

*Perry & Kittrell, Charles P. Green, A. W. Gholson, Jr., and Alton T. Cummings for plaintiff, appellee.*

*W. M. Nicholson, James B. Ledford, James J. Randleman and L. Glen Ledford for respondents, appellants.*

BOBBITT, J.   While the record shows four assignments of error, only two are discussed in appellants' brief. Assignments of error, under our Rules and decisions, are deemed abandoned when appellant's

brief states no reason or argument and cites no authority in support thereof. *S. v. Perry*, 250 N.C. 119, 108 S.E. 2d 447.

Appellants assign as error: "That the Respondents, and each of them, were denied the right to face and cross-examine their accusers, contrary to the laws of the State of North Carolina." Here, as in No. 385, *Harriet Cotton Mills v. Local Union No. 578, Textile Workers Union of America (AFL-CIO), et al., ante*, 218, these respondents did not object to the evidence when offered, nor did they move to strike the evidence or any part thereof, nor did they request an opportunity to cross-examine any of the persons whose affidavits were offered in evidence, nor did they except to the order of Judge Bickett on the ground set forth in this assignment of error; and, on authority of what is stated and held in the cited case, this assignment of error is overruled.

The remaining assignment of error is in these words: "That the record does not support the Judgment as to either Respondent." Appellants, *in their brief*, make no contention that the evidence was not sufficient to support the orders of June 23, 1959, relating specifically to respondents Pulley and Choplin. As to these respondents, there was plenary evidence to support the findings of fact and the orders. Indeed, as to knowledge of the restraining order and the contents thereof, the findings are based in substantial part on their own testimony. Appellants, *in their brief*, do contend the evidence was not sufficient to support the findings of fact and order of June 23, 1959, relating specifically to respondent Morris. While the exception and assignment of error might well be dismissed as broadside, we deem it appropriate to consider this contention.

The only evidence in the record relating in any way to respondent Morris consists of statements in the affidavit of W. H. Neathery, substantially as follows: Between 12:10 and 1:00 p.m. on Monday, April 6, 1959, while watching, by means of binoculars, from an office in the mill building, he saw respondent Morris "shoot one time *toward the building* from which (he) was watching, and heard the ball hit *the side of the building.*" (Our italics)

It is contended in behalf of respondent Morris that the restraining order, if otherwise applicable to him, did not prohibit his said alleged action. The contention is that the restraining order relates to described actions directed against persons entering, upon or leaving plaintiff's premises and *to their property*, not to actions against plaintiff's property. For the reason stated below, we deem it unnecessary to pass upon this particular contention.

Upon this record, we are of opinion, and so hold, that the evidence

is insufficient to support the finding of fact that respondent Morris had actual knowledge of the restraining order and of its contents within the rule stated in No. 393, *Henderson Cotton Mills v. Local Union No. 584, Textile Workers Union of America (AFL-CIO), et al., ante,* 240.

Judge Bickett found that respondent Morris had actual knowledge of the restraining order and of its contents, "by means of the said Restraining Order being conspicuously posted on bulletin boards set 75 feet *on either side of the gates of the Harriet Cotton Mills,* and two copies of said Order being posted on either side of the door of the Vance County Court House, and a copy thereof being published in the Henderson Daily Dispatch, a newspaper published in Vance County, on February 14, 1959, and the contents thereof having been publicized over the radio." (Our italics)

The only evidence relevant to these findings is the affidavit of Sheriff Cottrell in which he states: ". . . on February 14, 1959, two copies of the Temporary Restraining Order, issued by Judge William Y. Bickett in the case of *HENDERSON COTTON MILLS vs. LOCAL NO. 584, et al,* were conspicuously posted on bulletin boards set up 75 feet *on either side of each gate at the Henderson Cotton Mills,* and two copies posted on either side of the Court House Door in Henderson, N. C.; I also know of my own knowledge that a copy of this Temporary Restraining Order has been published in Henderson, and the contents thereof publicized over the radio, . . ." (Our italics) Obviously, this affidavit relates to a similar restraining order issued by Judge Bickett in a separate action.

There is no evidence, apart from the single incident of April 6, 1959, which purports to identify respondent Morris in any way. He was not a defendant. He was not served with summons, complaint or restraining order. *There was no evidence that he knew a restraining order had been issued.* There was no evidence that he was a former employee of plaintiff or on strike or a member of defendant Union. Indeed, there was no evidence that he resided in Vance County or had been in the vicinity of plaintiff's plant or in Vance County prior to the incident of April 6, 1959. Under these circumstances, we are constrained to hold that the evidence was insufficient to show that he had actual knowledge of the restraining order and of its contents and wilfully violated the terms thereof.

If respondent Morris had testified, perhaps the record would have presented a different factual situation. But, unlike his co-respondents, he did not testify. With good reason, he may reflect upon this state-

ment of William James, the philosopher: "Man's silence power is equal in importance to his word power."

It is noted: Nothing in the record before us indicates what disposition, if any, has been made of the contempt proceedings in relation to Nellie Roberson and Barbara Roberson, co-respondents of appellants.

Affirmed as to respondents Pulley and Choplin.

Reversed as to respondent Morris.

HIGGINS, J., not sitting.